IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

GABRIEL BECERRA,

     Plaintiff,

v.                                                                    Civ. No. 20-1260 KG/GJF

THE CITY OF ALBUQUERQUE,
ALBUQUERQUE POLICE OFFICERS
DAVID HENRY and WAYNE MCCUMBER,
CIVILIAN POLICE OVERSIGHT AGENCY
INVESTIGATOR ERIN ONEAL,
CIVILIAN POLICE OVERSIGHT AGENCY
EXECUTIVE DIRECTOR EDWARD HARNESS, Esq.,
ALBUQUERQUE POLICE CHIEF MIKE GEIER, and
ALBUQUERQUE CHIEF ADMINISTRATOR OFFICER
SARITA NAIR,

     Defendants.

## MEMORANDUM OPINION AND ORDER

This case finds its genesis in bad neighbors: barking dogs, harassment allegations, and multiple calls to the Albuquerque Police Department.  Eventually, Defendants David Henry and Wayne McCumber swore out a criminal complaint for misdemeanor harassment against Plaintiff Gabriel Becerra.  That criminal complaint, and the investigative steps leading to the complaint, form the basis for this civil rights case.

This matter comes before the Court on the following motions: 1) Defendants City of Albuquerque, David Henry, Wayne McCumber, Erin Oneal, Edward Harness, and Sarita Nair's (collectively, City Defendants) Motion to Dismiss for Failure to State a Claim (Doc. 14), which is fully and timely briefed (Docs. 22, 24); 2) Defendant Mike Geier's (Chief Geier) Motion to Dismiss for Failure to State a Claim or Alternatively for Qualified Immunity (Doc. 36), which is fully and timely briefed (Docs. 41, 46); 3) Plaintiff Gabriel Becerra's Cross Motion for Summary

Judgment (Docs. 37, 38) and City Defendants' Motion Pursuant to Rule 56(d) (Doc. 50), to

which Plaintiff timely responded (Doc. 52); 4) Plaintiff's Revised Motion for Leave to Amend

(Docs. 48, 49, 55, 56, 63, 64, 65); 5) Plaintiff's "Notice Regarding Opposing Counsels' Duty to

Cite Adverse Authority to Tribunal and Said Counsels' Failure to Do So" (Doc. 68); 6)

Plaintiff's "Notice of Plaintiff's Intent to File Revised and Amended Motion and Memorandum

in Support of Summary Judgment" (Doc. 69); and 7) City Defendants' and Chief Geier's Joint

Motion to Strike Doc. 73, Plaintiff's Reply in Support of Plaintiff's Revised Motion and

Memorandum for Leave to Amend Pleadings (Doc. 74), which is fully and timely briefed (Docs.

76, 77).

      Having considered the briefing and the relevant law, and being otherwise fully advised,

the Court: grants the City Defendants' Motion to Dismiss (Doc. 14); grants Chief Geier's Motion

to Dismiss (Doc. 36); denies as moot Plaintiff's Cross Motion for Summary Judgment (Docs. 37,

38); denies as moot the City Defendants' Motion Pursuant to Rule 56(d) (Doc. 50); denies

Plaintiff's Motions to Amend (Docs. 48, 49, 55, 56, 63, 64, 65); denies Plaintiff's "Notice

Regarding Opposing Counsels' Duty to Cite Adverse Authority to Tribunal and Said Counsels'

Failure to Do So" (Doc. 68); denies Plaintiff's "Notice of Plaintiff's Intent to File Revised and

Amended Motion and Memorandum in Support of Summary Judgment" (Doc. 69); and denies as

moot City Defendants' and Chief Geier's Joint Motion to Strike Doc. 73, Plaintiff's Reply in

Support of Plaintiff's Revised Motion and Memorandum for Leave to Amend Pleadings (Doc.

74).

I.    *Facts and Procedural History[1]*

Plaintiff Gabriel Becerra has lived at 928 Crane Dr. SW, in Albuquerque, New Mexico,

for over a decade.  (Doc. 21) at ¶¶ 13, 15.  Since at least June 2008, he experienced issues with

his neighbor's barking dogs, located at 924 Crane Dr. SW.  *Id.* at ¶ 13.  Plaintiff reported the

noise to authorities, leading the neighbors to "retaliat[e]" against him by installing "loud

modified exhaust on their vehicle to terrify [him] with extremely loud sound," building "an

encroaching shed/dog house close to Plaintiff's bedroom window," and "lying to authorities

among other things."  *Id.*  Needless to say, the situation deteriorated.

While Plaintiff was away from home between November 27, 2018, and December 12,

2018, his neighbors called the Albuquerque Police Department (APD) three times to report a

neighbor playing barking dog sounds through a speaker.  *Id.* at ¶¶ 15, 16, 21, 26.  The three calls

occurred on December 4, 5, and 6, 2018.  *Id.* at ¶¶ 16, 21, 26.  Nothing came of the December 4

or December 5 service calls with APD.  *Id.* at ¶¶ 16, 19, 21, 24.

On December 6, however, Defendant Officers Henry and McCumber responded to 924

Crane Dr. SW.  *Id.* at ¶ 26.  With his Amended Complaint, Plaintiff submitted lapel cam video

from Defendants Henry and McCumber, taken on December 6, 2018.[2]  The video depicts

---

[1] Unless otherwise specified, the facts detailed herein are drawn from Plaintiff's Amended
Complaint to Recover Damages for Deprivation of Civil Rights (Doc. 21), which is the operative
complaint at this time.  For purposes of the motions to dismiss and motions to amend, the Court
accepts as true all well-pleaded factual allegations.  *Santa Fe Alliance for Public Health and
Safety v. City of Santa Fe*, 993 F.3d 802, 811 (10th Cir. 2021) (citation omitted).

[2] The parties appear to agree that the lapel video has not been tampered with or otherwise altered.
By attaching the lapel video to and specifically incorporating the video by reference in the
Amended Complaint, Plaintiff made the lapel video a part of the Complaint.  *Oxendine v.
Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001) ("[I]n deciding a motion to dismiss pursuant to
Rule 12(b)(6), a court may look both to the complaint itself and to any documents attached as
exhibits to the complaint."); *see also Hall v. Bellmon*, 935 F.2d 1106, 1112 (10th Cir. 1991)
(same).  Thus, the Court considers the lapel video in deciding these motions.

Defendants Henry and McCumber approaching 924 Crane Dr. SW and speaking with the

occupant.  During that conversation, one of the Defendants asks Marvin Garcia (the neighbor)

where the speaker is located.  Mr. Garcia indicates near Plaintiff's fence, and the Defendant

states "oh, okay, right there," while standing on Mr. Garcia's property and looking over the fence

into Plaintiff's property.  AXON BODY 2 X81213762 at 2018-12-06 T15:42:44-49Z; AXON

BODY 2 X81195948 at 2018-12-06 T15:42:44-49Z.  After some additional discussion with Mr.

Garcia, the Defendants cross from Mr. Garcia's property onto Plaintiff's property.

The Defendants walk across Plaintiff's driveway, near the garage, and behind Plaintiff's

truck, which was backed-in to the driveway.  Defendants attempt to contact Plaintiff, but

Plaintiff was not home.  Plaintiff's front porch is "screened in" with wrought iron.  There does

not appear to be a "no trespassing" or other sign on the property indicating a general refusal to

communicate with the public.

After they are unable to contact Plaintiff, and while standing where Plaintiff's walkway

to the front porch meets his driveway, one Defendant reads the license plate from the backed-in

truck and calls it in for ownership information.  The license plate is plainly visible from the

Defendant's vantage point on the walkway leading up to the front porch.  AXON BODY 2

X81213762 at 2018-12-06 T15:48:41Z.

Plaintiff received a criminal summons in the mail when he returned home, on or about

December 20, 2018.  (Doc. 21) at ¶ 50.

II.    *Standard of Review*

1. *Motion to Dismiss under Rule 12(b)(6)*

A court, in accordance with Rule 12(b)(6), may dismiss a complaint for "failure to state a

claim upon which relief can be granted."  In analyzing a Rule 12(b)(6) motion to dismiss, all

"well-pleaded factual allegations in the complaint are accepted as true and viewed in the light most favorable to the nonmoving party." *Santa Fe Alliance for Public Health and Safety v. City of Santa Fe*, 993 F.3d 802, 811 (10th Cir. 2021) (citation omitted).  Rule 12(b)(6) requires that a complaint set forth the grounds of a plaintiff's entitlement to relief through more than labels, conclusions, and a formulaic recitation of the elements of a cause of action. *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  In the context of a Rule 12(b)(6) motion to dismiss, "courts may consider not only the complaint itself, but also attached exhibits, . . . , and documents incorporated into the complaint by reference . . . ." *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009) (internal citations omitted).  While a complaint does not need to include detailed factual allegations, "factual allegations must be enough to raise a right to relief above the speculative level. . . ." *Twombly*, 550 U.S. at 545.  In other words, a court can dismiss a complaint under Rule 12(b)(6) only where it is obvious that the plaintiff failed to set forth "enough facts to state a claim to relief that is plausible on its face." *Id.* at 547.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

In evaluating a qualified immunity defense in the context of a Rule 12(b)(6) motion to dismiss, courts "must determine whether the plaintiff pled facts indicating: (1) the defendant violated a statutory or constitutional right and (2) that right was 'clearly established' at the time of the challenged conduct." *Crall v. Wilson*, 769 Fed. Appx. 573, 575 (10th Cir. 2019) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)); *Myers v. Brewer*, 773 Fed. Appx. 1032, 1036 (10th Cir. 2019) ("At the motion to dismiss stage, it is the defendant's conduct *as alleged in the complaint* that is scrutinized for objective legal reasonableness" (quotation and citation

omitted)).  Courts "may address the two prongs of the qualified-immunity analysis in either order: '[I]f the plaintiff fails to establish either prong of the two-pronged qualified-immunity standard, the defendant prevails on the defense.'" *Cummings v. Dean*, 913 F.3d 1227, 1239 (10th Cir.), *cert. denied sub nom. Cummings v. Bussey*, 140 S. Ct. 81 (2019) (quoting *A.M. v. Holmes*, 830 F.3d 1123, 1134-35 (10th Cir. 2016), *cert. denied*, ___ U.S. ___, 137 S. Ct. 2151 (2017)).

    With respect to the second qualified immunity prong, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Thomas v. Durastanti*, 607 F.3d 655, 669 (10th Cir. 2010) (quotation omitted).  Ordinarily, "a preexisting Supreme Court or Tenth Circuit decision, or the weight of authority from other circuits, must make it apparent to a reasonable officer that the nature of his conduct is unlawful." *Carabajal v. City of Cheyenne*, 847 F.3d 1203, 1210 (10th Cir. 2017).  In deciding whether a precedent provides fair notice to a defendant, the United States Supreme Court has instructed lower courts "not to define clearly established law at a high level of generality." *Kisela v. Hughes*, ___ U.S. ___, 138 S. Ct. 1148, 1152 (2018).  Rather, "the clearly established law must be 'particularized' to the facts of the case." *White v. Pauly*, ___ U.S. ___, 137 S. Ct. 548, 552 (2017) (*per curiam*) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)).  Although there need not be "a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate." *Kisela*, 138 S. Ct. at 1152 (quoting *White*, 137 S. Ct. at 551).

    "The law is also clearly established if the conduct is so obviously improper that any reasonable officer would know it was illegal." *Callahan v. Unified Gov't of Wyandotte Cnty.*, 806 F.3d 1022, 1027 (10th Cir. 2015).  In other words, "when a public official's conduct is so

6

egregious [that] even a general precedent applies with 'obvious clarity,' the right can be clearly

established notwithstanding the absence of binding authority involving materially similar facts."

*Ullery v. Bradley*, 949 F.3d 1282, 1291 (10th Cir. 2020).  Courts, however, must not use the

"obvious clarity" doctrine "when there are any relevant ambiguities. . . ."  *Colbruno v. Kessler*,

928 F.3d 1155, 1165 (10th Cir. 2019).  "'[T]he obvious clarity' scenario is a 'narrow exception'

to the 'normal rule that only case law and specific factual scenarios can clearly establish a

violation.'"  *J W by & through Tammy Williams v. Birmingham Bd. of Educ.*, 904 F.3d 1248,

1260 (11th Cir. 2018) (citation omitted).  In sum, "qualified immunity protects 'all but the

plainly incompetent or those who knowingly violate the law.'"  *Aldaba v. Pickens*, 844 F.3d 870,

877 (10th Cir. 2016) (quoting *Mullenix v. Luna*, ___ U.S. ___, 136 S. Ct. 305, 308 (2015)).

   *2.   New Mexico Tort Claims Act*

   New Mexico courts have not determined that qualified immunity provides a defense for

claims brought under the New Mexico Tort Claims Act.  *Romero v. Sanchez*, 1995-NMSC-028,

¶ 25.  Without a clear mandate from the New Mexico courts to apply qualified immunity to

NMTCA claims, this Court has previously declined to do so.  *Gahan v. Sharp*, Civ. No. 12-1297

KG/SCY, 2015 WL 13666979, at *4 (D.N.M.) (citing *Todd v. Montoya*, 877 F. Supp. 2d 1048,

1106 (D.N.M. 2012)).  The parties have not brought contrary authority to the Court's attention.

Therefore, the Court again declines to apply qualified immunity to NMTCA claims.

   *3.   Pro se Party*

   Although the Court may dismiss a *pro se* party's complaint under Rule 12(b)(6) for

failure to state a claim, the Court must liberally construe the pleadings filed by a *pro se* party.

*See Hall v. Witteman*, 584 F.3d 859, 863 (10th Cir. 2009) (finding that plaintiff's "pro se status

entitles him to a liberal construction of his pleadings").  While the Court holds a *pro se* litigant's

pleadings to less stringent standards, *pro se* litigants must, nevertheless, comply with the Federal

Rules of Civil Procedure.  *See, e.g.*, *Ogden v. San Juan Cnty.*, 32 F.3d 452, 455 (10th Cir. 1994),

*cert. denied*, 514 U.S. 1048 (1995) (noting that while Tenth Circuit "liberally construe[s] *pro se*

pleadings, an appellant's *pro se* status does not excuse the obligation of any litigant to comply

with the fundamental requirements of the Federal Rules of Civil and Appellate Procedure").

Moreover, the Court is not obliged to craft legal theories for the *pro se* plaintiff or to supply

factual allegations to support a *pro se* plaintiff's claim for relief.  *See Hall v. Bellmon*, 935 F.2d

at 1110 (holding that "we do not believe it is the proper function of the district court to assume

the role of advocate for the pro se litigant").

   *4. Motion to Amend*

   Federal Rule of Civil Procedure 15(a)(1)(B) allows a party to "amend its pleading <u>once</u> as

a matter of course . . . if the pleading is one to which a responsive pleading is required, . . . 21

days after service of a motion under Rule 12(b) . . . ." (emphasis added).  After that time, Rule

15(a)(2) provides that "a party may amend its pleadings only with the opposing party's written

consent or with the court's leave."  Rule 15(a)(2) makes explicit that "[t]he court should freely

give leave when justice so requires."  The purpose of Rule 15(a)(2) is to provide litigants "the

maximum opportunity for each claim to be decided on its merits rather than on procedural

niceties."  *Hardin v. Manitowoc-Forsythe Corp.*, 691 F.2d 449, 456 (10th Cir. 1982).  "Refusing

leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the

opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments

previously allowed, or futility of amendment."  *Sinclair Wyo. Refining Co. v. A & B Builders,*

*Ltd.*, 989 F.3d 747, 777 (10th Cir. 2021) (citation omitted).

III.   *Analysis*

   1.   *City Defendants' Motion to Dismiss for Failure to State a Claim (Doc. 14)*

The City Defendants move to dismiss Plaintiff's Amended Complaint[3] on the basis that it

fails to state a claim for which relief can be granted, pursuant to Rule 12(b)(6).   Plaintiff

expressly attached the lapel cam videos to the Amended Complaint and affirmatively urges the

Court to consider those videos.   (Doc. 22) at 10 ("Because the Defendants [sic] lapel video

recordings are an integral part of Plaintiff's Complaint he filed a copy [of] them and are [sic]

attached to Plaintiff's Amended Complaint.   Plaintiff believes that said recordings to assist [sic]

this Court in its [sic] final decisions for this case.").[4]   As such, the Court considers the video

footage in resolving the Motion to Dismiss.   For ease of analysis, the Court addresses the Counts

out of order.   For the reasons explained herein, the Court grants the City Defendants' Motion to

Dismiss (Doc. 14)[5]:

   A.   *Count I, Illegal Search and Seizure*

Plaintiff alleges that Defendants Henry and McCumber violated his Fourth Amendment

right to be free from illegal searches and seizures by obtaining the license plate number from his

Ford Ranger, while that vehicle was backed up on his driveway in proximity to Plaintiff's

garage.   Plaintiff contends that Defendants Henry and McCumber intruded upon and conducted a

---

[3] The City Defendants filed their Motion to Dismiss (Doc. 14) before Plaintiff filed his Amended
Complaint.   However, the parties appear to agree that the Motion to Dismiss remains live and
applies to the Amended Complaint.   Accordingly, the Court considers the Motion to Dismiss
with respect to the Amended Complaint.

[4] Plaintiff subsequently filed a "cross motion for Summary Judgment" (Doc. 38) in "response" to
the City Defendants' Motion to Dismiss.   The Court has considered this filing in ruling on the
Motion to Dismiss.

[5] Because the Court determined that Plaintiff did not allege any constitutional violations with
respect to the City Defendants, the Court need not—and does not—consider whether the City
Defendants are entitled to qualified immunity.

warrantless search within the curtilage of his home, that is, the area of his driveway near his garage.

Factually, the Court notes that Plaintiff did not have a "no trespassing" or other sign in front of his home indicating he did not accept visitors. However, Plaintiff's front porch is gated or screened in using wrought iron. (Doc. 21) at ¶ 34. Drawing all reasonable inferences in the light most favorable to Plaintiff, as the non-movant, the totality of the circumstances may have put a reasonable person on notice that he could not enter Plaintiff's screened-in porch, which Defendants Henry and McCumber did not do.

Plaintiff contends that Defendants Henry and McCumber entered the curtilage of his home when they approached the front porch and when they read his license plate. The officers, however, were only in those spaces accessible to a private citizen. As such, Defendants Henry and McCumber did not intrude on the constitutionally protected area when they approached Plaintiff's front porch to knock on the door, because any member of the public could have done the same. *Florida v. Jardines*, 569 U.S. 1, 8 (2013) ("[A] police officer not armed with a warrant may approach a home and knock, precisely because that is 'no more than any private citizen might do.'" (quoting *Kentucky v. King*, 563 U.S. ----, ----, 131 S. Ct. 1849, 1862 (2011)). Contrary to Plaintiff's unsupported assertion, this screen or fencing did not indicate that Plaintiff withdrew his "implied consent" for any visitor or member of the public to approach his front porch. (Doc. 22) at 6.

From Defendants' vantage point on Plaintiff's walkway, an area that any private citizen might enter, they were able to view Plaintiff's license plate. Plaintiff contends that Defendants Henry and McCumber unlawfully "searched" his license plate information to identify him. This argument presupposes a privacy interest in one's license plate, which does not exist.

Defendants Henry and McCumber did not intrude on the constitutionally protected area of Plaintiff's home.  Moreover, Plaintiff had no expectation of privacy in his license plate.  Therefore, Defendants Henry and McCumber did not violate Plaintiff's Fourth Amendment right to be free from unreasonable searches and seizures.  Similarly, Count 1 fails to state a claim with respect to any tort enumerated in the New Mexico Tort Claims Act, NMSA 1978, § 41-4-12.  For these reasons, the Court grants the City Defendants' Motion to Dismiss with respect to Count 1.

B. *Count III, False Arrest*

Plaintiff brings Count III, False Arrest, against Defendants Henry and McCumber.  Plaintiff alleges that these Defendants "violated Plaintiff's Fourth Amendment rights [sic] to be secure from false arrest" when they swore out the criminal complaint, and further contends that the criminal complaint "functionally arrest[ed] Plaintiff without legal process."  (Doc. 21) at 15.

Plaintiff was never arrested, or seized, within the meaning of the Fourth Amendment.  Therefore, his claim for false arrest pursuant to 42 U.S.C. § 1983 fails as a matter of law.  A plaintiff who "has been imprisoned without legal process . . . has a claim under the Fourth Amendment analogous to a tort claim for false arrest or false imprisonment."  *Mondragon v. Thompson*, 519 F.3d 1078, 1082 (10th Cir. 2008).  Here, Plaintiff concedes he was never arrested or imprisoned.  Instead, he argues that he was "functionally arrested" when he received a summons and citation in the mail for misdemeanor harassment.  (Doc. 21) at 10.  However, Plaintiff cites to no authority to establish that the Fourth Amendment contemplates "functional arrests."

To the extent Plaintiff brings a false imprisonment claim, pursuant to New Mexico law, that claim also fails.  "Under New Mexico law, 'false imprisonment consists of intentionally confining or restraining another person without his consent and with knowledge that he has no

lawful authority to do so.'" *Romero v. Sanchez*, 1995-NMSC-028, ¶ 13 (quoting NMSA 1978, §

30-4-3).  Again, Plaintiff was never taken into custody, was never handcuffed, and was never

detained by officers.  Thus, he has failed to state a claim.

For these reasons, the City Defendants' Motion to Dismiss Count III is granted.

C.  *Count II, Municipal Liability and Violation of Due Process*

i.  *Monell Claim*

Plaintiff alleges "municipal liability" based on an alleged failure to adopt a policy

necessary to protect Plaintiff's rights.  It appears this count is asserted against the City of

Albuquerque and Defendants Henry, McCumber, Oneal, Geier, Nair, and Harness.[6]  Plaintiff

alleges that these Defendants "contribut[ed] to this abusive environment [allowing the City to]

enact or maintain with deliberate indifference to follow a policy of failing to protect Plaintiff's

Constitutional Rights [sic]."  (Doc. 21) at 14.

Generally, to establish a claim for municipal liability pursuant to section 1983, the

plaintiff must demonstrate: "(i) that an officer committed an underlying constitutional violation;

(ii) that a municipal policy or custom exists; and (iii) that there is a direct causal link between the

policy or custom, and the injury alleged." *Saenz v. Lovington Mun. Sch. Dist.*, 105 F. Supp. 3d

1271, 1294 (D.N.M. 2015) (citing *Graves v. Thomas*, 450 F.3d 1215, 1218 (10th Cir. 2006)).[7]

---

[6] Defendant Geier is not part of the City Defendants' Motion to Dismiss (Doc. 14), and will be addressed separately, *infra* Section III.2.

[7] The Tenth Circuit draws a fine line between cases "in which a plaintiff seeks to hold a municipality liable for failing to train an employee who as a result acts unconstitutionally, and cases in which the city's failure is itself an unconstitutional denial of substantive due process." *Crowson v. Washington Cnty. Utah*, 983 F.3d 1166, 1187 (10th Cir. 2020) (quoting *Williams v. City & Cnty. of Denver*, 99 F.3d 1009, 1019 (10th Cir. 1996) (subsequent history omitted). While a municipality cannot be held liable "for failure to train when there has been no underlying constitutional violation by one of its employees," the inquiry shifts "where the claim is premised upon a formally promulgated policy, well-settled custom or practice, or final decision by a policymaker." *Id.* (internal quotation omitted).  In the latter instance, "the inquiry

Plaintiff's claim, in this case, fails on the first prong.  Because the Plaintiff has not plausibly alleged an underlying constitutional violation, he cannot sustain a claim for municipal liability.

ii.     *Procedural and Substantive Due Process*

Plaintiff makes an additional argument or claim in the Complaint that the Defendants' actions "intentionally and willfully deprived Plaintiff of his Constitutional Rights without recourse for the arbitrary, abusive, harassing and criminal conduct of Defendants."  (Doc. 21) at 15, ¶ 101.  The Court construes this statement as a claim that these Defendants violated Plaintiff's right to procedural and substantive due process.

The Fourteenth Amended provides that "[n]o State shall . . . deprive any person of life, liberty, or property without due process of law."  U.S. Const. amend. XIV.  The Due Process Clause encompasses two distinct forms of protections: (i) procedural due process, which requires a state to employ procedures when depriving a person of a protected interest; and (ii) substantive due process, which guarantees that a state cannot deprive a person of a protected interest for certain reasons.  *See, e.g., Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 845-46 (1998).  "Under either form of protection, however, a person must have a protected interest in either life, liberty, or property."  *Chavez-Rodriguez v. City of Santa Fe*, No. CIV 07-0633 JB/DJS, 2008 WL 5992271, at *6 (D.N.M. 2008).

---

is whether the policy or custom itself is unconstitutional so as to impose liability on the city of its own unconstitutional conduct in implementing an unconstitutional policy." *Id.* (quoting *Williams*, 99 F.3d at 1018).  Here, it is unclear from the Complaint whether Plaintiff makes a claim based entirely on an unconstitutional *policy*, rather than failure to train.  However, Plaintiff clarified in his Response that he sought liability based on the "the need for more or different training." (Doc. 22) at 10-11 (quoting *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 773 (10th Cir. 2013)).  Given this clarification, the Court will not advance arguments or potential avenues for liability when alternative legal bases have been advanced by Plaintiff.

The Court already determined that Plaintiff did not have a protected property interest in his license plate information, under the circumstances of this case. Additionally, Plaintiff's life is not and has not been at risk. The question, then, becomes whether Plaintiff has a protected liberty interest at stake.

While the Court determined that Plaintiff was not arrested at any time, a complaint was filed against him that instituted legal process. And while Plaintiff does not appear to have been exposed to any sentence of incarceration, the Court agrees that this invokes Plaintiff's liberty interests. However, the legal process itself provides procedural and substantive due process. To the extent Plaintiff takes umbrage with the process he pursued to make complaints against Defendants Henry and McCumber, Plaintiff failed to identify a due process right that was allegedly violated. That Plaintiff did not agree with the outcome of the Civilian Police Oversight Agency's investigation does not amount to a federal due process violation. Additionally, the Court notes that none of Plaintiff's allegations, taken individually or in concert, shock the judicial conscience. *Halley v. Huckaby*, 902 F.3d 1136, 1153 (10th Cir. 2018).

Accordingly, Plaintiff failed to state a claim a due process violation under the Fourteenth Amendment.

### iii.    Liability under the NMTCA

Finally, Plaintiff has not identified, and the Court could not find, any applicable waiver of immunity in the New Mexico Tort Claims Act. Accordingly, the Court finds that no waiver of liability applies to Plaintiff's municipal liability claim.

For these reasons, the City Defendants' Motion to Dismiss is granted with respect to Count II.

D.  *Additional Claims*

Separate from his Amended Complaint, Plaintiff appears to bring a claim for excessive

force, in violation of the Fourth Amendment and the NMTCA.  (Doc. 38) at 8.  It is undisputed

that Plaintiff never had any physical contact with any of the Defendants.  As such, Plaintiff failed

to state a claim for excessive force under 42 U.S.C. § 1983 or the New Mexico Tort Claims Act.

To the extent Plaintiff intended to bring such a claim against the City Defendants, the Motion to

Dismiss is granted on that point.

To the extent Plaintiff attempts to predicate his claims on the Department of Justice's

investigation and oversight of the Albuquerque Police Department related to excessive force

matters, Plaintiff lacks standing to prosecute a case on behalf of anyone other than himself.  *See*

*Alderman v. United States*, 394 U.S. 165, 174 (1969) ("We adhere to these cases and to the

general rule that Fourth Amendment rights are personal rights which, like some other

constitutional rights, may not be vicariously asserted."); *Archuleta v. McShan*, 897 F.2d 495, 497

(10th Cir. 1990) (holding "a section 1983 claim must be based upon the violation of plaintiff's

personal rights, and not the rights of someone else").  Additionally, as noted above, Plaintiff was

not subject to any "force," and failed to state a claim for excessive force.

Having considered the entirety of the City Defendants' Motion to Dismiss, and as further

explained above, the Motion is granted.

2.  *Defendant Mike Geier's Motion to Dismiss for Failure to State a Claim (Doc. 36)*

Chief Geier moves to dismiss Plaintiff's Amended Complaint on the basis that it fails to

state a claim for which relief can be granted, pursuant to Rule 12(b)(6).  (Doc. 36).  Based on the

Amended Complaint (Doc. 21) and Plaintiff's Cross Motion for Summary Judgment (Doc. 38), it

appears Chief Geier is named as a Defendant solely with respect to Count II, Municipal Liability

– Failure to Adopt Policy Necessary to Protect Plaintiff's Constitutional Rights.  (Doc. 38) at 19.

For the reasons explained herein, the Court grants Chief Geier's Motion to Dismiss (Doc. 36).[8]

The factual allegations related to Chief Geier are scant: Plaintiff alleges Chief Geier

wrote a letter to Plaintiff on May 18, 2020, indicating that the Civilian Police Oversight Agency

(CPOA) had investigated Plaintiff's complaint, Investigator Oneal[9] conducted the investigation,

and Chief Geier agreed with the findings of CPOA Director Harness.  (Doc. 21) at 12, ¶¶ 75-77;

(Doc. 38) at 27, ¶ 107.

Plaintiff does not state a claim against Chief Geier under the Fourth Amendment, either

for unlawful search/seizure or for excessive force, because Plaintiff does not allege any

individual involvement with Chief Geier.  Similarly, Plaintiff failed to state a claim against Chief

Geier under the NMTCA.  To the extent Plaintiff brought such claims against Chief Geier, Chief

Geier's Motion to Dismiss is granted.

Furthermore, Plaintiff does not allege that Chief Geier "arrested" or "seized" or "falsely

imprisoned" Plaintiff at any time.  Indeed, Plaintiff alleged that Chief Geier was not, in any way,

involved in this matter until nearly eighteen months *after* the incident in question.  Accordingly,

to the extent Plaintiff attempted to bring a claim for false arrest or false imprisonment against

Chief Geier under 42 U.S.C. § 1983 or the NMTCA, Plaintiff failed to state a claim upon which

relief can be granted and those claims are dismissed.

To the extent Plaintiff intended to bring a claim against Chief Geier for a due process

violation, pursuant to the Fourteenth Amendment, Plaintiff has not raised any allegation that

---

[8] Because the Court determined that Plaintiff did not allege any constitutional violations with respect to Chief Geier, the Court need not—and does not—consider whether Chief Geier is entitled to qualified immunity.

[9] The Investigator's name is likely "O'Neal."  However, since Plaintiff refers to "Erin Oneal," the Court does the same.

Chief Geier took any action that deprived Plaintiff of any protected liberty or property interest. *Chavez-Rodriguez v. City of Santa Fe*, No. CIV 07-0633, 2008 WL 5992271, at *6 (D.N.M. 2008). Accordingly, Plaintiff failed to state a claim upon which relief can be granted with respect to a due process violation, and that claim is dismissed.

To the extent Plaintiff intended to bring a claim for municipal liability, that claim also fails as a matter of law. With respect to claims brought under section 1983, that section does not authorize imposition of liability under a theory of *respondeat superior*. *Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011). Additionally, municipal liability is based on governmental policy or custom and is brought against a municipality or governmental entity, not against an individual. *Monell v. Dep't of Social Svcs.*, 436 U.S. 658, 691-92 (1978).

Thus, Plaintiff's only possible avenue for a claim against Chief Geier would be for supervisory liability. The Supreme Court narrowed supervisory liability with respect to section 1983 claims in *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). However, "§ 1983 allows a plaintiff to impose liability upon a defendant-supervisor who creates, promulgates, implements, or in some other way possesses responsibility for the continued operation of a policy the enforcement (by the defendant-supervisor or [his] subordinates) of which 'subjects, or causes to be subjected' that plaintiff 'to the deprivation of any rights ... secured by the Constitution . . . .'" *Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010) (quoting 42 U.S.C. § 1983).

This avenue, too, is foreclosed to Plaintiff because no underlying constitutional violation occurred and because Plaintiff cannot point to a policy that Defendants Henry and McCumber violated. For these reasons, to the extent Plaintiff brought a section 1983 claim against Chief Geier based on some theory of supervisory or vicarious liability, the Court grants Chief Geier's Motion to Dismiss.

Finally, the Court considers whether Plaintiff stated a claim against Chief Geier under the New Mexico Tort Claims Act.  The Court concludes he did not.  "[W]hen subordinate officers have committed one of certain specified torts, the Tort Claims Act does not provide immunity to supervisory law enforcement officers whose negligent training or supervision of the subordinates was a proximate cause of the tort." *McDermitt v. Corr. Corp. of Am.*, 1991-NMCA-034, ¶ 1.  However, New Mexico courts "emphasize[ ] that the negligence complained of must cause a specified tort [ ]; immunity is not waived for negligence standing alone." *Caillouette v. Hercules, Inc.*, 1992-NMCA-008, ¶ 18.

The Court's finding that neither Defendant Henry nor Defendant McCumber committed a tort under the New Mexico Tort Claims Act precludes any supervisory claim against Chief Geier.  For these reasons, the Court grants Chief Geier's Motion to Dismiss with respect to Plaintiff's supervisory liability claims against him, brought pursuant to the NMTCA, and those claims are dismissed.

In summary, Chief Geier's Motion to Dismiss is granted in full.

3. *Plaintiff Gabriel Becerra's Cross Motion for Summary Judgment (Docs. 37, 38) and City Defendants' Motion Pursuant to Rule 56(d) (Doc. 50)*

Having granted the City Defendants' Motion to Dismiss (Doc. 14) and Chief Geier's Motion to Dismiss (Doc. 36), and having found that Plaintiff failed to state a claim against any Defendant under 42 U.S.C. section 1983 or the New Mexico Tort Claims Act, there are no remaining claims upon which Plaintiff could move for summary judgment.  Accordingly, Plaintiff's Cross Motion for Summary Judgment (Docs. 37, 38) is denied as moot, as is the City Defendants' Motion Pursuant to Rule 56(d) (Doc. 50).

4. *Plaintiff's Revised Motion for Leave to Amend (Docs. 48, 49, 55, 56, 63, 64, 65)*

Plaintiff filed multiple iterations of a motion to amend.  The Complaint was originally filed on December 4, 2020.  (Doc. 1).  The City Defendants moved to dismiss on January 14, 2021.  (Doc. 14).  On January 25, 2021, Plaintiff filed his first Amended Complaint.  (Doc. 21). Plaintiff simultaneously submitted a USB drive containing lapel video from Defendants Henry and McCumber.  He then filed a Motion to Amend and Affidavit in support on March 8 and March 10, 2021, respectively.  (Docs. 48, 49).  Approximately three weeks later, on March 31, 2021, Plaintiff filed a Revised Motion and Memorandum for Leave to Amend Pleading and Affidavit in support.  (Docs. 55, 56).  Plaintiff then filed a Reply in Support of Revised Motion and Memorandum for Leave to Amend Pleading on May 4, 2021.  (Doc. 63).  The same day, Plaintiff filed a "Verified Second Amended Complaint to Recover Damages for Deprivation of Civil Rights."  (Doc. 64).  Plaintiff indicates that the Reply and "Verified Second Amended Complaint" should have been filed together, as one document.  (Doc. 65).

The first Amended Complaint includes three counts: Count I, Illegal Search and Seizure, against Defendants Henry and McCumber, alleging that these Defendants "violated Plaintiff's Fourth Amendment rights [sic] to be secure from unreasonable searches and seizures," (Doc. 21) at 14; Count II, Municipal Liability, Failure to Adopt Policy Necessary to Protect Plaintiff's Rights, appears to be asserted against the City of Albuquerque and Defendants Oneal, Nair, Geier, and Harness, alleging that these Defendants "contribut[ed] to this abusive environment [allowing the City to] enact or maintain with deliberate indifference to follow a policy of failing to protect Plaintiff's Constitutional Rights [sic]," (Doc. 21) at 14; and Count III, False Arrest, against Defendants Henry and McCumber, alleging that these Defendants "violated Plaintiff's Fourth Amendment rights [sic] to be secure from false arrest" when they swore out the criminal complaint and that the criminal complaint "functionally arrest[ed] Plaintiff without legal

process," (Doc. 21) at 15.  The Court construes each claim as being brought pursuant to 42

U.S.C. §1983 and the New Mexico Tort Claims Act, NMSA 1978, §41-4-1 *et seq.*


      A.  *Motion to Amend* (Docs. 48, 49)

Plaintiff's proposed second Amended Complaint includes additional factual allegations

regarding the DOJ investigation of and consent decree with the Albuquerque Police Department.

Plaintiff spends multiple paragraphs detailing APD's history of issues with excessive force.

(Doc. 48) at ¶¶ 89-97.  Plaintiff contends that Defendants Henry and McCumber employed

"excessive force" during their investigation of the barking dog issue, but also admits that he

never had any personal contact with these Defendants.  (Doc. 48) at ¶¶ 22 ("police Defendants

Henry and McCumber made no contact with Plaintiff), 172 (". . . Henry and McCumber's use of

excessive force [against] . . . Plaintiff").  The Court construes these allegations as raising a

Fourth Amendment claim for excessive force with respect to Defendants Henry and McCumber.

The Court does not consider these allegations as raising a claim for battery, given Plaintiff's

admission that he had no contact with the Defendants.  Plaintiff squarely brings the following

claims:

- Count I, "Illegal Search and Seizure," against Defendants Henry and McCumber for their

"physical intrusion on constitutionally protected property for the purpose of obtaining

information [which] constitutes a search within the meaning of the Fourth Amendment . . . ."

(Doc. 48) at ¶ 151.  Plaintiff contends that these Defendants performed an unauthorized "search

and seizure of Plaintiff's license plate information," and that the same was "objectively

unreasonable." *Id.* at ¶ 153.  The Court construes this Count as alleging search and seizure

violations, related to entry onto Plaintiff's property and his license plate information, under 42

U.S.C. §1983 and under the NMTCA, NMSA 1978, § 41-4-12.  Plaintiff also asserts a claim for punitive damages under this theory.

- Count II, "False Arrest," apparently against Defendants Henry and McCumber.  (Doc. 48) at ¶¶ 159-167.  Here, Plaintiff contends Defendants Henry and McCumber "functionally seized Plaintiff[,] restraining his liberty," when they swore out the criminal complaint.  *Id.* at ¶ 161.  Given the phrasing of these allegations, the Court construes this Count as alleging a seizure or arrest violation of the Fourth Amendment, under 42 U.S.C. §1983, and false arrest as defined by New Mexico law, under the NMTCA, NMSA 1978, § 41-4-12.  Plaintiff also asserts a claim for punitive damages under this theory.

- Count III, "Municipal Liability – Failure to Adopt Policy Necessary to Protect Plaintiff's Constitutional Rights," against Defendant City of Albuquerque.  Plaintiff alleges that Defendant City knew or should have known about APD's history of excessive force violations, yet chose to do nothing, and this "failure to adopt policy necessary to protect Plaintiff's Constitutional Rights proximately caused damages to Plaintiff."  (Doc. 48) at ¶ 177.  The Court construes this Count as alleging a municipal liability claim under 42 U.S.C. §1983 and *Monell v. Department of Social Services*, 436 U.S. 658 (1978), and a claim for municipal liability under the NMTCA.

- Count IV, "Individual Liability – Deprivation of Plaintiff's Constitutional Rights," against Defendants Oneal, Harness, Geier, and Nair.  Plaintiff asserts that each of these Defendants "possessed power to exercise control, direction and discipline APD's use of excessive force and violations of its inhabitants constitutional rights," which included "power to exercise control, direction and discipline APD Officers Henry and McCumber[]. . . ."  (Doc. 48) at ¶ 180.  Plaintiff claims that these Defendants participated in the deprivation of Plaintiff's constitutional rights.  The Court construes this as a claim for individual liability under 42 U.S.C.

§ 1983, supervisory liability under 42 U.S.C. § 1983, individual liability under the NMTCA, and

supervisory liability under the NMTCA.  Plaintiff also alleges he is entitled to punitive damages.

     B.  *Revised Motion and Memorandum for Leave to Amend Pleadings* (Docs. 55, 56)

Plaintiff's "Revised Motion and Memorandum for Leave to Amend Pleadings," and the

attached draft amended complaint, constitutes the third proposed Amended Complaint in this

case.  (Docs. 55, 56).  This document contains yet more allegations regarding the lapel videos,

the state case against Plaintiff for harassment, and the DOJ investigation of and consent decree

with the Albuquerque Police Department.  Notwithstanding the addition of 100 additional

paragraphs, the claims alleged in the proposed third amended complaint track those of the

proposed second amended complaint.

     C.  *"Reply in Support of Revised Motion and Memorandum for Leave to Amend Pleading" and Fourth Amended Complaint* (Docs. 63, 64, 65)

Plaintiff submitted his "Reply in Support of Revised Motion and Memorandum for Leave

to Amend Pleading" (Doc. 63) contemporaneously with an "updated version of his proposed

second amended complaint" (Docs. 64, 65).  This "updated version," however, contains yet more

allegations regarding the lapel videos and the DOJ investigation of and consent decree with the

Albuquerque Police Department, and constitutes a <u>fourth</u> proposed amended complaint.  The

claims remain the same.

     D.  *Analysis*

Plaintiff's first Amended Complaint (Doc. 21) was properly filed pursuant to Rule

15(a)(1)(B) because it was filed less than 21 days after Chief Geier's Answer (Doc. 18) and less

than 21 days after the City Defendants' Motion to Dismiss (Doc. 14).  Accordingly, the

Amended Complaint supplanted the original Complaint as the operative pleading in the case.

Plaintiff's subsequent proposed amendments fail to cure the deficiencies addressed above, *supra* III.1 and III.2. Plaintiff's additional factual allegations related to the DOJ investigation of APD fail to cure the fundamental issue with Plaintiff's Complaint: Plaintiff failed to state a constitutional violation, as a matter of law. The proposed amended complaints fail to cure this defect and thus fail to state a cause of action. As a result, the Court denies Plaintiff's motions to amend on the basis of futility. *Sinclair Wyo. Refining Co. v. A & B Builders, Ltd.*, 989 F.3d 747, 777 (10th Cir. 2021) (citation omitted).

5. *Plaintiff's "Notice Regarding Opposing Counsels' Duty to Cite Adverse Authority to Tribunal and Said Counsels' Failure to Do So" (Doc. 68)*

Plaintiff filed his "Notice Regarding Opposing Counsels' Duty to Cite Adverse Authority to Tribunal and Said Counsels' Failure to Do So" on May 14, 2021. (Doc. 68). Plaintiff cites Federal Rule of Civil Procedure 11(a), (b), and (c). *Id.* The Court construes this document as a Motion for Sanctions under Rule 11(c)(2).

Plaintiff correctly states that any attorney or unrepresented party presenting a pleading, written motion, or other paper to the Court certifies "that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," among other things, that the legal contentions "are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law[.]" Fed. R. Civ. P. 11(b)(2).

When a party brings a motion for sanctions based on conduct that allegedly violates Rule 11(b), the motions "must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets." Fed. R. Civ. P. 11(c)(2).

Plaintiff contends that counsel for the City Defendants and for Chief Geier repeatedly failed to disclose to this Court that qualified immunity is not available as a defense to municipal liability, or *Monell*, claims brought under 42 U.S.C. §1983.  (Doc. 68).  Plaintiff further contends that counsel for the Defendants failed to disclose that qualified immunity is waived for individuals, with respect to illegal search and seizure and false arrest, for claims brought under the New Mexico Tort Claims Act, NMSA 1978 §41-4-12.  (*Id.*)  The Defendants did not respond to the Notice.

As an initial matter, the Court notes that Plaintiff expressly filed his Notice *before* giving notice to the Defendants and before the 21-day safe harbor period in Rule 11(c)(2) expired.  (*See* Doc. 68) at 4 ("19. Plaintiff will allow said counsels a reasonable opportunity to address said violations. 20. In the event counsels . . . do nothing to address said violations, Plaintiff will be compelled to move for sanctions and other relief to alleviate said violations and prevent manifest injustice in this case.").  On this basis alone—Plaintiff's failure to comply with the strictures of Rule 11(c)(2)—the Notice is denied, to the extent the Notice constitutes a motion for sanctions.

Substantively, the Court notes that neither the City Defendants nor Chief Geier asserted qualified immunity as a defense to municipal liability under 42 U.S.C. §1983.  Moreover, neither the City Defendants not Chief Geier squarely addressed the claims brought under the New Mexico Tort Claims Act.  Instead, the Defendants asserted that no constitutional right had been violated, full stop, and in the alternative, the individual defendants were entitled to qualified immunity under 42 U.S.C. §1983.  The Defendants' arguments did not imply to the Court an assertion of qualified immunity under the New Mexico Tort Claims Act.[10]

---

[10] For purposes of this Memorandum Opinion and Order, the Court does not and need not address whether qualified immunity is or could be a valid defense to liability for claims brought pursuant to the New Mexico Tort Claims Act.

To the extent the Notice (Doc. 68) constitutes a motion for sanctions under Rule 11(c)(2), the motion is denied because the Court finds no violation of Rule 11(b) and because Plaintiff failed to comply with the safe harbor provision of Rule 11(c)(2).

6.  *Plaintiff's "Notice of Plaintiff's Intent to File Revised and Amended Motion and Memorandum in Support of Summary Judgment" (Doc. 69)*

On May 18, 2021, Plaintiff filed a Notice asking the Court to grant his Motion to Amend or grant leave to file an amended motion for summary judgment.  (Doc. 69).  To the extent this Notice could be construed as a motion, the motion is denied.  For the reasons explained above, the Court denied Plaintiff's motions to amend on the basis of futility and denied his motion for summary judgment as moot.  Nothing about the instant Notice requires reconsideration of those rulings.

7.  *City Defendants' and Chief Geier's Joint Motion to Strike Doc. 73, Plaintiff's Reply in Support of Plaintiff's Revised Motion and Memorandum for Leave to Amend Pleadings (Doc. 74)*

Defendants, jointly, filed a Motion to Strike Doc. 73, Plaintiff's Reply in Support of Plaintiff's Revised Motion and Memorandum for Leave to Amend Pleadings.  (Doc. 74).  Given the Court's rulings and the present posture of the case, the Court need not consider Defendants' Motion to Strike (Doc. 74), and therefore denies the motion as moot.

IV.  *Conclusion*

For the reasons stated herein, the Court rules as follows:

1.  City Defendants' Motion to Dismiss (Doc. 14) is granted;

2.  Chief Geier's Motion to Dismiss (Doc. 36) is granted;

3.  Plaintiff's Cross Motion for Summary Judgment (Docs. 37, 38) is denied as moot;

4.  City Defendants' Motion Pursuant to Rule 56(d) (Doc. 50) is denied as moot;

5.  Plaintiff's Motions to Amend (Docs. 48, 49, 55, 56, 63, 64, 65) are denied;

6. Plaintiff's "Notice Regarding Opposing Counsels' Duty to Cite Adverse Authority to Tribunal and Said Counsels' Failure to Do So" (Doc. 68) is denied;

7. Plaintiff's "Notice of Plaintiff's Intent to File Revised and Amended Motion and Memorandum in Support of Summary Judgment" (Doc. 69) is denied;

8. City Defendants' and Chief Geier's Joint Motion to Strike Doc. 73, Plaintiff's Reply in Support of Plaintiff's Revised Motion and Memorandum for Leave to Amend Pleadings (Doc. 74) is denied as moot;

9. All claims against Chief Geier are dismissed without prejudice;

10. All claims against the City Defendants are dismissed without prejudice; and

11. This case is dismissed.

IT IS SO ORDERED.

_____
UNITED STATES DISTRICT JUDGE